UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| DEMETRIA DAVIS, individually and on behalf of all similarly situated individuals, | ) ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) Case No. 1:16-cv-03592-SCJ ) |
| ATHENAHEALTH, INC., | ) ) |
| Defendant. | ) ) |

## JOINT MOTION FOR APPROVAL OF SETTLEMENT AGREEMENT AND RELEASE

COME NOW Plaintiffs and Defendant (collectively the "Parties"), by and through their respective undersigned counsel, hereby file this Joint Motion for Approval of Settlement Agreement and Release.  In support of their joint motion, the Parties state as follows:

### STATEMENT OF FACTS AND SUMMARY OF PROCEEDINGS

This is an overtime collective action under the Fair Labor Standards Act ("FLSA").  Plaintiffs, who previously and currently work(ed) for athenahealth, Inc. ("athenahealth" or "Defendant") in one or more work weeks under the job title of "Senior Client Implementation Support Analyst" sued Defendant alleging the

claim of failure to pay overtime compensation for hours worked under the FLSA due to misclassification as exempt employees. Defendant denied liability. The Parties agreed to settle the case and now request this Court's approve the settlement agreement and release.

A.    Pleadings, Discovery, and Pre-Trial Motions.

This case was filed by Plaintiffs on September 26, 2016. On November 2, 2016, the Parties filed a Joint Motion to Stay the case pending mediation and issuance of notice to the putative class members. (*See* Doc. No. 14.) This Court granted the Parties' Motion on November 7, 2016. (*See* Doc. No. 17.) In addition to the Named Plaintiff, seventy (70) other current and former Senior Client Implementation Support Analyst filed consents to participate in this case. (*See* Doc. Nos. 16-48.) The Parties exchanged discovery for the purposes of settlement. The Parties agreed to conduct a private mediation following the close of the opt-in period.

B.    Settlement

On March 8, 2017, the Parties conducted a successful private mediation with Ellen Malow of Malow Mediation & Arbitration, Inc. (Desai Decl. ¶ 3.) The Parties reached a settlement as to all claims in the litigation, including all claims encompassed by Plaintiff's Complaint. (*Id.*)   The Parties then executed a

Settlement Agreement and Release (the "Agreement") that memorializes the terms of the settlement, a copy of which is attached hereto as Exhibit 1. The Parties agreed that they would submit this Joint Motion for Approval to this Honorable Court requesting the Court's approval of the Agreement.

## ARGUMENT AND CITATION OF AUTHORITY

In order to have an enforceable release of FLSA claims in this Circuit, the Court must review and approve agreements settling alleged violations of the FLSA. *See Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697 (1945); *see also Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982) (holding claims for back wages arising under the FLSA may be settled or compromised only with approval of the Secretary of Labor or the court). "When employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness." *Lynn's Food Stores, Inc.*, 679 F.2d at 1353. Accordingly, the Parties are submitting a copy of the Agreement for the Court's review and approval. A proposed Order approving the Agreement is attached hereto as Exhibit 2.

## I.     APPROVAL OF PAYMENTS TO PLAINTIFFS

In order to approve a settlement of overtime claims proposed by an

employer and an employee, a court must determine that the settlement is a "fair and reasonable resolution of a bona fide dispute" of the claims raised pursuant to the FLSA.  *Lynn's Food Stores, Inc.*, 679 F.2d at 1355.  There is a strong presumption in favor of finding a settlement fair.  *See Murchison v. Grand Cypress Hotel Corp.*, 13 F.3d 1483, 1486 (11th Cir. 1994) (noting that Eleventh Circuit Court of Appeals "favor[s] and encourage[s] settlements in order to conserve judicial resources.").  The Eleventh Circuit has detailed the circumstances that justify court approval of an FLSA settlement in a litigation context as follows:

> Settlements may be permissible in the context of a suit brought by employees under the FLSA for back wages because initiation of the action by the employees provides some assurance of an adversarial context.  The employees are likely to be represented by an attorney who can protect their rights under the statute. Thus, when the parties submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought by an employer's overreaching.  If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages that are actually in dispute, we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation.

*Lynn's Food Stores, Inc.*, 679 F.2d at 1355.  In determining whether the settlement is fair, adequate, and reasonable, courts sometimes examine the factors used in approving the settlement of class actions under Federal Rule of Civil Procedure 23:

> (1) the existence of collusion behind the settlement;
> (2) the complexity, expense, and likely duration of the litigation;

(3) the stage of the proceedings and the amount of discovery completed;
(4) the probability of plaintiff's success on the merits;
(5) the range of possible recovery; and
(6) the opinions of counsel.

*See e.g.*, *Prieto v. Scheeler's Cafe De Marco, Inc.*, 2017 WL 359220, at *1 (M.D. Fla. Jan. 9, 2017) (citing *Leverso v. SouthTrust Bank of Ala., Nat'l Ass'n*, 18 F.3d 1527, 1531 n.6 (11th Cir. 1994)); *Garcia v. Riccy's Landscaping Servs., Inc.*, No. 6:08-cv-706-Orl- 28GJK, 2009 WL 347418 at *2 (M.D. Fla. Feb. 11, 2009); *Hitchcock v. Orange County, Fla.*, No. 604CV1722ORL28JGG, 2006 WL 3614925 at *3 (M.D. Fla. Dec. 11, 2006).[1]  As set forth below, examination of each of these factors shows that the terms of the Agreement are fair, adequate, and reasonable and should be approved by the Court.

1. <u>The Possible Existence of Collusion</u>.

Defendant contends that all Plaintiffs were exempt from the overtime requirements of the FLSA.  Nonetheless, the Parties exchanged their respective valuations of potential damages if Plaintiffs were to succeed in proving FLSA liability in this case.  (Desai Decl. ¶ 4.) Defendant did not keep track of Plaintiffs' hours of work during the time period covered by this settlement, but does possess

---

[1] The Parties note, however, that concern for absent class members, which underlies the approval factors in a Rule 23 settlement is less present in an FLSA settlement such as this one, where each opt-in Plaintiff has the right to review and accept or reject the settlement agreement.

reports of "Go-Lives" or client visits conducted by the Plaintiffs during their employment, which Defendant produced to Plaintiffs in advance of mediation. (*Id.*) Records of Go-Live weeks were important because Plaintiffs alleged they worked significantly more overtime during their Go-Live weeks than they did during their initial training weeks or in the weeks they spent in call center roles in athenahealth's Atlanta office. (*Id.*)  In addition, Defendant produced to Plaintiffs' counsel Plaintiffs' pay records.  (*Id.*) Counsel for both Plaintiffs and Defendant conducted independent calculations of potential liabilities based on these records. (*Id.*)

Plaintiff provided Defendant with a damages calculation based on each Plaintiff's alleged FLSA damages, calculated by dividing weekly salary by 40 hours to determine regular rate, then calculating overtime at time and a half that regular rate ("Plaintiffs' calculations"). (Desai Decl. ¶ 5.)[2]  Plaintiff provided Defendant with Plaintiff's analysis of the potential maximum liability if all disputed issues were resolved in their favor, including liquidated damages. (*Id.*) This analysis of potential maximum liability in Plaintiffs' estimates was based on Plaintiffs' overtime estimates, which averaged 20 overtime hours during Go-Live

---

[2] Defendant also paid bonuses, which Plaintiffs' counsel divided by total hours worked and multiplied by 0.5 the resulting regular rate to add to the overtime damages based on salary earnings. (Desai Dec. ¶ 5.)

weeks, 8 overtime hours during call center weeks, and 2.5 overtime hours during training weeks. (*Id*. at ¶ 6.) The analysis also assumed rejection of Defendant's defense that the Plaintiffs were exempt from the overtime requirements of the FLSA; a favorable calculation of Defendant's overtime liability in the amount of time and one-half Plaintiffs' regular rate (salary divided by forty hours) for all hours worked over forty in a work week; and doubling the overtime back pay award for full liquidated damages.  (*Id.*) Defendant disagreed with Plaintiffs' positions and calculations.

Defendant provided Plaintiffs with its calculation of Plaintiffs' potential damages, which was calculated by dividing weekly compensation amounts by all hours worked each week to determine regular rate, then calculating overtime at only one-half that decreased regular rate ("Defendant's calculations"). Defendant's calculation assumed 2 overtime hours during Go-Live weeks and no overtime hours during training weeks or call center weeks. Defendant presented Plaintiffs with alternative analyses of potential liability, including that the amount of overtime damages would be calculated at a regular rate by dividing weekly compensation by all hours worked each week, and then paid at half-time at that regular rate for hours worked over forty in a work week ("half-time") and that this

Court could decline to award liquidated damages. Plaintiffs disagreed with Defendant's positions and calculations.

As set forth above, the Parties engaged in extensive and continued settlement negotiations before ultimately reaching an agreement to settle the case. During the mediation the parties exchanged additional information regarding the number of overtime hours worked in Go-Live weeks after the position was reclassified from exempt to non-exempt. (Desai Decl. ¶ 7.) Although the parties disagree as to the proper weight to be given to that evidence, the data suggested that the overtime hours worked were greater than the amount advocated by Defendant and significantly less than the amount estimated by Plaintiffs. (*Id.*) The parties weighed this information in their settlement negotiations. Thus, the settlement in this case is the ultimate result of arms-length negotiations by Parties who were well represented by counsel and made aware of all potential outcomes.

According to Plaintiffs' calculations, the 71 Plaintiffs would be entitled to a maximum gross amount of $1,383,183.08 for overtime back pay (exclusive of fees and costs, and including liquidated damages) if they succeeded in overcoming Defendant's exemption defense, obtaining a damages award calculated at the time and a half weekly pay divided by forty hours per week rather than at half-time, and obtaining a jury verdict at trial that credited them with every hour claimed. (Desai

Decl. ¶ 8.)   According to Defendant's calculations, the 71 Plaintiffs would be entitled to approximately $12,928.74 for overtime back pay (exclusive of fees and costs and liquidated damages) if Plaintiffs succeeded in overcoming Defendant's exemption defense, failed to recover liquidated damages and were awarded damages at the half-time calculation for two hours of overtime in the weeks in which they performed "Go-Lives."

Under the terms of settlement (if approved), the 71 Plaintiffs would share, for their overtime claims, the total gross amount of $308,130 net of all attorney's fees and costs. The proposed allocation of this settlement amount is included in Exhibit A to the Settlement Agreement.

Plaintiffs calculated the amount of each Plaintiff's distribution from the $308,130 using the start and end-dates of each Plaintiff's employment in the relevant position during the relevant period, as well as each Plaintiff's salary and bonus information, the dates each Plaintiff was assigned on a "Go-Live," and data regarding each Plaintiff's paid time off (PTO). (Desai Decl. ¶ 9.) The eligible time-frame for this case is February 2015 (when the Senior Client Implementation Support Analyst position began) to September 4, 2016 (when the position was reclassified as non-exempt). These dates, along with each person's dates of employment, were used to define each Plaintiff's eligible workweeks. (*Id*. at ¶ 10.)

Each eligible workweek fell into one of three categories: training, call center, or Go-Live; this classification dictated weekly hours worked. (*Id.*)

Training weeks were defined as either the first fifteen weeks worked in an eligible position (unless otherwise specified by the Plaintiff) or all weeks between the eligible position start date and the first Go-Live record, whichever stint was shorter.  (Desai Decl. ¶ 11.) Go-Live weeks included all weeks containing a Go-Live record. Call center weeks included all eligible weeks not identified as training or Go-Live. (*Id.*)  Regardless of classification, recorded PTO hours were deducted from estimated hours, yielding weekly hours worked. (*Id.*) The allocation also includes a $500 floor, which affects three Plaintiffs, and $1,500 named Plaintiff enhancement for Plaintiff Davis, discussed *infra*.

Using these parameters, the pro-rata allocation of $308,130 equates to approximately 7.5 weekly overtime hours for Go-Live weeks, 2.5 weekly overtime hours for call center weeks, and 0.5 weekly overtime hours for training weeks, with a 50% chance of success on the disputed calculation method (0.5 times the regular rate versus 1.5 times the regular rate), *and with full liquidated damages*. (Desai Decl. ¶ 12.) If one assumes no liquidated damages, the settlement provides approximately 15 weekly overtime hours during Go-Live weeks, 5 weekly overtime hours during call center weeks, and 1 weekly overtime hour during

training weeks, with the same 50% chance of success on the calculation method. (*Id.*) Given that these numbers assume 100% success on the merits of Defendant's exemption defense, the overtime hours compensated under this settlement provide substantial value for Plaintiffs. Defendant denies any liability under the FLSA and denies that Plaintiffs are entitled to any recovery in this lawsuit; however, without admitting liability and solely for the purposes of avoiding ongoing costs of litigation, Defendant has agreed to make the settlement payments reflected in the Agreement.

In exchange for these settlement payments, Plaintiffs will provide Defendant with a tailored release covering overtime claims which arose during the time period at issue in the case. (*See* Exhibit 1, Settlement Agreement ¶ 3.)  All of the above, combined with the fact that this case was mediated with an experienced private mediator, establish that this settlement was reached by arms-length negotiations without collusion by or on behalf of any parties.

2. <u>The Complexity, Expense, and Likely Duration of the Litigation</u>.

The Agreement allows Plaintiffs to take a substantial recovery now, without suffering the delay and risk of litigating the claims.  In this case, further litigation including discovery disputes on issues involving attorney-client and work product privilege and anticipated proceedings on motions to compel, depositions,

anticipated cross-motions for summary judgment, and appeals could drag on for years and require the expenditure of a tremendous amount of resources.  Fees and costs in this case would only have continued to increase for both sides if the case had not settled.

    3. <u>The Stage of the Proceedings and the Amount of Discovery Completed</u>.

This factor considers whether the parties have had the opportunity to fully evaluate the claims.  *Carnegie v. Mutual Sav. Life Ins. Co.*, No. Civ. A. CV-99S3292NE, 2004 WL 3715446, *22 (N.D. Ala. 2004); *Meyer v. Citizens and Southern Nat. Bank*, 677 F. Supp. 1196, 1209-10 (M.D. Ga. 1988) citing *Holmes v. Continental Can Company*, 706 F.2d 1144, 1149 (11th Cir. 1983).

In this case, the Parties exchanged significant discovery in anticipation of mediation including Defendant's production of all of the Plaintiffs' pay records, records of Go-Lives, and records of PTO. Plaintiffs contend that Defendant may have been required to produce additional documents responsive to Plaintiffs' requests had the case not settled, including significant e-discovery. To prepare for mediation, Plaintiffs' counsel interviewed witnesses, (Desai Decl. ¶ 13), as did Defense Counsel. As a result of these efforts, the Parties have had sufficient information upon which to assess the potential merit of each claim, ultimate liability, and the apparent risk of proceeding to trial.

4. <u>The Probability of Plaintiffs' Success on the Merits</u>.

Defendant has asserted throughout this litigation that Plaintiffs were not entitled to overtime compensation because they were exempt from the overtime requirements of the FLSA. Additionally, disputes exist as to the amount of overtime worked and the calculation of overtime damages. *See Sigida v. Munroe Foods 2 LLC*, No. 1:14-CV-3968-RWS, 2016 WL 7239952, at *8 (N.D. Ga. Dec. 15, 2016) (finding, based on the facts presented, that the half-time method applied to hours under 45 in a week and time-and-a-half method applied to hours over 45 in a week).  Thus, Defendant disputes whether Plaintiffs would be entitled to any overtime compensation at all, much less in the amounts claimed.  Plaintiffs maintain that Defendant misclassified them as exempt in light of their job duties and that they were entitled to an additional payment for overtime hours worked. The Parties therefore disagree on the likelihood of Plaintiffs' success on the merits.

5. <u>The Range of Possible Recovery</u>.

"[T]here is a range of reasonableness with respect to a settlement—a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972).

13

As summarized above, the Parties dispute the amount of damages to which Plaintiffs would be entitled even if Defendant did not prevail on its exemption defense. First, even if Plaintiffs defeated the exemption defense, Defendant contends that a non-exempt employee who is paid a salary for all hours worked has already been paid his or her "regular rate" for all such hours and is only owed half-time for any hours worked in excess of forty in the workweek.  Under Defendant's calculation methodology, Defendant's overtime liability would then be only the additional half-time payment at the hourly rate determined by dividing Plaintiffs' weekly salary by the number of hours worked that week. Plaintiffs contend that Defendant's half-time payment method of calculation does not apply because Plaintiffs' salary was not intended to compensate them for all hours worked. *See Sigida*, 2016 WL 7239952, at *8. Defendant disagrees with this position.

Next, regarding Plaintiffs' claim for liquidated damages in an amount equivalent to overtime damages under Section 216(b) of the FLSA, Defendant contends that this Court should deny or reduce liquidated damages based on the "good faith" defense, relying on the job duties of the Senior Client Implementation Support Analyst position to satisfy the requirements of the FLSA's Administrative Exemption. Plaintiffs contend that Defendant cannot prove its good faith defense and avoid the imposition of liquidated damages under the FLSA, and that

liquidated damages may be imposed even if Defendant shows good faith. *See Joiner v. City of Macon*, 814 F.2d 1537, 1539 (11th Cir. 1987).

As stated above, the range of Plaintiffs' possible net recovery is zero if Defendant proved its exemption defense; approximately $12,928.74 in overtime back pay according to Defendant's calculations for two hours of overtime in Go-live weeks only, and $1,383,183.08 in overtime back pay according to Plaintiffs' calculations. Again, the settlement payments to Plaintiffs of $308,130 net of all fees and costs constitutes recovery of 15 hours of overtime for Go-Live Weeks, 5 hours of overtime for call center weeks, and an hour of overtime for training weeks, with a 50% chance of success on the damage calculation method. Or, viewed another way, it provides recovery of half those overtime amounts plus liquidated damages. Either way, the settlement provides a reasonable compromise of individually calculated overtime damages.

6. Counsels' Opinions.

Based on what the Parties learned through informal discovery, from witness interviews, and from extensive research and investigation, the Parties negotiated a fair settlement for the Plaintiffs. By settling, Plaintiffs avoid the risks of not establishing liability at trial, avoid substantial and indefinite delay in payment involved in having to wait for trial and any appeals, and avoid potential adverse

determinations on the damages issues outlined above. Counsel for both Parties therefore recommend acceptance of this settlement and represent herein that the settlement is fair, beneficial, and equitably allocated among the settling Plaintiffs.

## II.    APPROVAL OF PAYMENT OF ATTORNEYS' FEES[3]

The Agreement provides that Defendant shall pay Plaintiffs' attorneys' fees and costs in the amount of $90,000. (*See* Exh. 1 ¶ 1(a)(2).) For purposes of this motion, the $90,000 is allocated as $7,518.47 in costs and $82,481.53 in fees. This amount is less than Plaintiffs' lodestar and is less than the 33% to which Plaintiffs would be entitled under their fee agreements. (Desai Decl. ¶ 14.) The Court should therefore approve this payment of attorneys' fees and costs.

The Fair Labor Standards Act ("FLSA") requires that the Court "shall, in addition to any judgment awarded to the plaintiff or plaintiff, allow a reasonable attorneys' fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). Fee awards are mandatory for prevailing plaintiffs in FLSA cases. *Kreager v. Solomon & Flanagan, P.A.*, 775 F.2d 1541, 1542 (11th Cir. 1985). The Supreme Court has held that a party is a "prevailing party" for purposes of an attorneys' fee award if the party "succeeded on any significant claim affording it some of the relief sought." *Texas State Teachers' Ass'n v. Garland Indep. Sch.*

---

[3] While Defendant does not oppose Plaintiffs' request for approval of payment of

*Dist.*, 489 U.S. 782, 791 (1989). In the instant action, Plaintiffs stand to recover a favorable settlement payment of a substantial number of overtime hours.  Thus, Plaintiffs are entitled to payment of their attorneys' fees and costs in this action by Defendant in the amount stated in the Agreement.

The total requested attorneys' fees is $82,481.53. (Desai Decl. ¶ 14.) Adding the $7,518.47 in requested costs and $82,481.53 in fees to the $308,130 to be paid to Plaintiffs, the total settlement amount is $398,130. The requested fees therefore represent less than 21% of the total settlement amount.

Plaintiffs' Counsel took this case on a contingency basis, which provides for the payment of attorneys' fees in the amount of one-third of any settlement. (Desai Decl. ¶ 15.) Because of this contingency fee arrangement, Plaintiffs' Counsel has not received payment for any of their time litigating the case, nor have they received reimbursement for their out-of-pocket costs expended. (*Id.*) Regardless, Plaintiffs' Counsel undertook the financial risk of potentially unsuccessful litigation, in an effort to recover overtime pay for workers they believe were misclassified as exempt.

Courts routinely approve similar contingency agreements in the amount of one-third, and it would be fair and reasonable to do so here as well. *See e.g.*,

attorney's fees, Defendant does not join in the request.

*Wreyford v. Citizens for Transportation Mobility, Inc.*, No. 1:12-CV-2524-JFK, 2014 WL 11860700, at *1 (N.D. Ga. Oct. 16, 2014); (approving a one-third fee); *Wolff v. Cash 4 Titles*, 2012 WL 5290155, at *4 (S.D. Fla. Sept. 26, 2012) ("One-third of the recovery is considered standard in a contingency fee agreement."); *Whittington v. Taco Bell of Am., Inc.*, No. 10-CV-01884-KMT-MEH, 2013 WL 6022972, at *6 (D. Colo. Nov. 13, 2013) (adopting the percentage-of-the-common fund approach in an FLSA settlement and finding that the agreed upon 39% covering fees and costs was reasonable as a matter of law); *Burkholder v. City of Fort Wayne*, 750 F. Supp. 2d 990, 997 (N.D. Ind. 2010) (finding 33.3% of the total settlement amount is reasonable in an FLSA action); *Yarrington v. Solvay Pharm., Inc.*, 697 F. Supp. 2d 1057, 1064–65 (D. Minn. 2010) (collecting cases and granting award of 33%). But Plaintiffs' fee request does not constitute one-third of the settlement fund; instead, Plaintiffs request less than 21% of the total settlement payment. Viewed under a common fund analysis, therefore, Plaintiffs' fee request is eminently reasonable.

Plaintiffs are aware, however, of cases in this circuit scrutinizing FLSA settlements wherein attorneys' fees and payments to Plaintiffs were negotiated "simultaneously." *See, e.g., Martin v. Huddle House, Inc.*, No. 2:10-CV-0082-WCO, 2011 WL 611625, at *2 (N.D. Ga. Feb. 11, 2011). Plaintiffs note that

*Martin* and the cases cited therein did not involve "common fund" collective action settlements, but rather simultaneous negotiation of payments to individual plaintiffs and separate payments to the attorneys. *Martin* involved a settlement which netted the plaintiff's counsel $8,500 and only provided $6,500 in payments to the plaintiffs. Likewise, cases citing *Martin* for the suggestion that fees should be negotiated separately from wages do not involve common fund settlements of collective actions. *See*, *e.g.*, *Marshall v. Good Vocations, Inc.*, No. CV 111-200, 2013 WL 394389, at *1 (S.D. Ga. Jan. 31, 2013); *Barnes v. Ferrell Elec., Inc.*, 2013 WL 5651903, at *2 (S.D. Ga. Oct. 16, 2013). Accordingly, Plaintiffs respectfully submit that it is entirely proper to settle an FLSA collective action for a common fund.

Nevertheless, the parties conducted the mediation of this case in two phases; first the parties negotiated a payment to Plaintiffs of $308,130. (Desai Decl. ¶ 16.) Second, and only after that settlement amount was finalized, the parties negotiated the payment of fees and costs. (*Id.*) That separate and distinct negotiation resulted in Defendant's agreement to pay $90,000 total in fees and costs. (*Id.*) Under *Martin*, there is "no need to independently scrutinize the reasonableness of attorney's fees provided in a FLSA settlement if and only if 'the plaintiff's attorneys' fee was agreed upon separately and without regard to the amount paid to

the plaintiff." *Martin*, 2011 WL 611625, at *2 (quoting *Bonetti v. Embarq Mgmt. Co.*, 715 F. Supp. 2d 1222, 1228 (M.D. Fla. 2009)). The Court should therefore approve Plaintiffs' Counsel's fees and costs as submitted and requested, since they were negotiated separately and without regard to the amount paid to Plaintiffs.

In the event the Court is inclined to review Plaintiffs' fees and costs, however, Plaintiffs provide information sufficient for it to do so. Plaintiffs' costs are outlined in Exhibit 3. The majority of the costs relate to mediation of the case, which resulted in this favorable settlement. (*See* Ex. 3, Pls.' Costs.) The payments noted to local counsel invoices are for costs only, not for local counsel's fees. (Desai Decl. ¶ 17.) Accordingly, the Court should approve the requested $7,518.47 in costs.

Plaintiffs have expended approximately $118,502 in attorneys' fees in the prosecution and resolution of this action, based on approximately 413 attorney and staff hours. (*See* Desai Decl. ¶ 18.) Thus, Plaintiffs' Counsel's lodestar amount greatly exceeds the fees actually sought through this settlement. The Court should therefore approve the $82,481.53 in requested fees.

Plaintiffs' Counsel's experience and firm reputation supports this lodestar calculation. Nichols Kaster, PLLP is renowned for its national wage and hour class and collective action practice.  (*See* Ex. 4, Firm Resume.) In fact, the firm

was set for two FLSA trials in this district in February of this year. *See Keira Vaughan, et al v. Paradise Entertainment Group, Inc. d/b/a Magic City, et al.*, N.D. Ga. Case No. 1:14-cv-00914-SCJ; *Clinton Henderson, et al. v. 1400 Northside Drive, Inc., d/b/a Swinging Richards, et al.*, N.D. Ga. Case No. 1:13-cv-03767-TWT. The firm has received several awards and recognitions for its nationwide class and collective action practice.  (*See* Ex. 4, Firm Resume.)

Matthew C. Helland, who was the primary partner on the file, leads the firm's San Francisco office. (Desai Decl. ¶ 19; *see also* Ex. 5, Helland Bio.) Reena Desai, who became a partner at Nichols Kaster on January 1, 2017, has extensive experience litigating wage and hour cases like this one. (Desai Decl. ¶ 19; *see also* Ex. 6, Desai Bio.)  Plaintiffs' Counsel's significant experience helped them push this case towards early resolution.

But that is not to say that this case settled without any work. To that end, a few points about Plaintiffs' time bear mention. First, Adron Mason billed approximately 190 hours on the file at a $175 per hour staff rate. (*See* Desai Decl. ¶ 20.) Mr. Mason is a class action clerk at Nichols Kaster, and was primarily responsible for client contact on the file. Of his 190 hours, approximately 115 were spent communicating with the firm's 71 clients on the case, including conducting detailed interviews to prepare for the mediation. (*Id*.) The information

Plaintiffs' Counsel gained through these client communications was invaluable during mediation. (*Id*.) If Plaintiffs' Counsel had assigned an attorney to this task, the resulting fees would have been much higher.

Likewise, Alexander Wise billed 19.5 hours at $175 per hour staff rate. Mr. Wise has worked at Nichols Kaster for 10 years as a litigation damages clerk. (Desai Decl. ¶ 21.) He has extensive experience analyzing damages and has testified at arbitration and a trial in wage and hour matters. (*Id*.) Mr. Wise's damages analysis allowed Plaintiffs to assign percentage likelihoods of success on each damages variable during mediation, and to promptly recalculate damages based on different assumptions of overtime hours worked. (*Id*.) If Plaintiffs had hired an expert to prepare their damages analysis the cost to the file would have been far greater than Mr. Wise's time.

Lastly, Plaintiffs note that the settlement agreement imposes substantial post-approval work on Plaintiffs' Counsel. Specifically, Plaintiffs' Counsel is responsible for mailing settlement notices to all 71 Plaintiffs, explaining the settlement to Plaintiffs, counseling them regarding their rights in the settlement, and securing acceptances from Plaintiffs during the tight 45-day notice time frame. (*See* Ex. 1.) Accordingly, if the Court is inclined to scrutinize Plaintiffs' fees for the purpose of reducing the claimed fee amount, Plaintiffs respectfully request that

the Court reserve such analysis for after settlement administration, at which point Plaintiffs' counsel could submit their contemporaneous time entries with additional briefing.

### C.    Service Payments Should Be Approved.

Under the terms of the Settlement Agreement, the parties have allocated and are requesting approval for a service payment for the lead named Plaintiff Davis in the amount of $1,500.   This is in recognition of her time and agreement to pursue this case on behalf of herself and others, and for the time and effort she spent assisting Plaintiffs' Counsel through meetings, calls and emails, mediation discussions.   (Desai Decl. ¶ 22.)   Each opt-in Plaintiff benefited from Plaintiff Davis' important contributions to this case.

This service payment is fair and reasonable, was already included in the allocation, and the parties respectfully request it be approved. *See, e.g., Bozak v. FedEx Ground Package Sys., Inc.,* 2014 WL 3778211, at *4–5 (D. Conn. July 31, 2014 (approving $10,000 incentive award, and identifying cases awarding similar or higher amounts); *Whittington*, 2013 WL 6022972, at *6 (approving $7,500.00 service award); *Torres v. Gristede's Op. Corp.*, 2010 WL 5507892, at *7 (S.D.N.Y. Dec. 21, 2010) (awarding $15,000 service award); *Wineland v. Casey's Gen. Stores, Inc.*, 267 F.R.D. 669, 677–78 (S.D. Iowa 2009) (approving

$10,000 service payment); *Su v. Elec. Arts, Inc.*, 2006 WL 4792780, *5 (M.D. Fla. Aug. 29, 2006) (approving $10,000 service payment); *see also Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 187 (W.D.N.Y. 2005) (recognizing that service payments are "particularly appropriate in the employment context" when the named plaintiff is a "former or current employee of the defendant . . . by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers").

## CONCLUSION

For the reasons set forth above and for good cause shown, the Parties respectfully request that this Court approval the Agreement (attached as Exhibit 1) and enter the proposed Order attached as Exhibit 2.

Respectfully submitted this 27th  day of April, 2017.

*/s/ Reena Desai*
NICHOLS KASTER, PLLP
MN Bar No. 0388311
4600 IDS Center, 80 South 8th Street
Minneapolis, MN 55402
Telephone: (612) 256-3200
Fax: (612) 215-6870
rdesai@nka.com

MAYS & KERR, LLC
John L. Mays
Georgia Bar No. 986574
235 Peachtree St. NE

*/s/ Eric Magnus*
JACKSON LEWIS P.C.
Georgia Bar No.: 801405
1155 Peachtree Street, NE
Suite 1000
Atlanta, Georgia 30309
T: (404) 525-8200
F:  (404) 525-1173
magnuse@jacksonlewis.com

*Attorney for Defendant*

202 North Tower
Atlanta, GA 30303
Direct/Fax: (404) 855-0820
john@maysandkerr.com

NICHOLS KASTER, LLP
Matthew C. Helland, CA Bar No. 250451
One Embarcadero Center, Suite 720
San Francisco, CA 94111
Tel: (415) 277-7235
Fax: (415) 277-7238
helland@nka.com

*Attorneys for Plaintiff and the Conditionally
Certified Class*

## **CERTIFICATE OF COMPLIANCE**

The undersigned counsel certifies that this document was prepared in compliance with LR 7.1, NDGa.   This document was prepared in Times New Roman 14-point font.

*/s/ Reena I. Desai*
Counsel for Plaintiffs

## **CERTIFICATE OF SERVICE**

I hereby certify that on April <u>27</u>, 2017, I electronically filed the foregoing **Joint Motion for Approval of Settlement Agreement and Release** and supporting documents with the Clerk of Court using the CM/ECF system which will automatically send e-mail notification of all attorneys of record

<i><u>/s/ Reena I. Desai</u></i>